IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BAGBY ELEVATOR, CO., INC.; et al., | ) ) ) |
| Petitioners, | ) ) |
| v. | ) Case No.: 2:07-CV-1396-VEH ) ) |
| ARTHUR W. STEBER, | ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION

Before the court are the motions of the respondent, Arthur W. Steber (hereinafter "Respondent"), to dismiss the Complaint of the petitioners, Bagby Elevator Co., Inc., Arthur P. Bagby, III, Anita Leslie Bagby, and Hunter Bagby (hereinafter "Petitioners") (doc. 7), and to strike Petitioners' Amended Complaint (docs. 13, 10, respectively).  For the reasons explained herein, the Motion to Strike is due to be **DENIED**.  Accordingly, the Motion to Dismiss is due to be **DENIED as MOOT**.

**I.    FACTUAL HISTORY**

Respondent is the former President of Bagby Elevator Co., Inc. (hereinafter "Bagby").  (doc. 10, ¶ 7).  In March 2006, following the termination of his

employment with Bagby, Respondent filed an action against Petitioners in the Circuit Court of Jefferson County, Alabama, asserting claims of minority shareholder oppression, fraud, breach of contract, defamation, and "other matters relating to his termination." (Id., ¶ 8). Petitioners moved to dismiss the action, arguing, *inter alia*, that the action was barred pursuant to an arbitration agreement.[1] (Id.). On a date unspecified in the Complaint, the State court granted Petitioners' motion to dismiss. (Id., ¶ 9).

On April 18, 2006, Respondent filed an arbitration claim against Bagby, asserting "essentially [a copy of] his prior State court complaint." (Id., ¶ 8). In addition, Respondent demanded that Bagby redeem all of the stock in Bagby either owned by him or claimed to be due him. (Id.).

Bagby answered Respondent's claims, denying all of the material allegations therein, on April 25, 2006. (Id., ¶ 9). Bagby also filed counterclaims for specific performance, declaratory relief, accounting and "other claims relating to [Respondent's] misconduct." (Id.). Finally, Bagby sought an award decreeing that it was entitled to redeem Respondent's stock in Bagby. (Id.).

During the weeks of March 26-30 and May 28-June 1, 2007, the dispute was

---

[1] The parties to said arbitration agreement are not entirely clear on the face of the Complaint.

submitted to an arbitration hearing, conducted by a three-member panel of the American Arbitration Association in Birmingham, Alabama. (Id., ¶ 10). On June 28, 2007, the panel issued an award which, according to Petitioners, denied all of Respondent's tort law claims against Bagby and granted the redemption relief that had been sought by both parties. (Id.). Specifically, the panel found that Bagby was to redeem Respondent's stock holdings in that company for a total of $1,365,571.00.[2] (Id., ¶ 11). The panel further concluded that Bagby was to pay this amount in installments, beginning with a payment of $665,571.00 within thirty days of the award date, and continuing with installments of $17,089.00 due on the first day of each month beginning August 1, 2007.[3] (Id.).

Having accepted the award, Bagby contacted counsel for Respondent on July 24, 2007, to communicate its plan to make its first payment under the award and to request a closing of that award at said counsel's offices on July 27, 2007. (Id., ¶ 12; Id., exh. C). Bagby also requested that Respondent relinquish his stocks certificates in Bagby as, according to Bagby, both the award and the first redemption payment,

---

[2] To determine the amount of money to which Respondent was entitled for the redemption of his stock ownership in Bagby, the panel determined that Respondent owned or constructively owned 18.11% of Bagby. (Id., ¶ 11).

[3] More specifically, after paying Respondent the initial installment of $665,571.00, Bagby was to pay the total balance of $700,000.00, plus interest at 8% per annum from June 30, 2007, in 48 monthly installments of $17,089.00. (Id.).

once tendered, rendered Respondent a creditor of Bagby rather than a shareholder. (Id.). In response, counsel for Respondent refused both to attend the closing and to surrender Respondent's stock certificates. (Id., ¶ 13; Id., exh. D). Said counsel requested instead that Bagby tender the first installment payment via mail to its offices. (Id.). Bagby did so as requested on July 27, 2007 via first class mail.[5] (Id., ¶ 14).

## II. PROCEDURAL HISTORY

Based on the allegations in the Complaint, which are not altogether clear, it appears that Respondent refused to accept the check tendered as described *supra* in satisfaction of Bagby's first payment due to him under the arbitration award. (See doc. 10, ¶ 15, and ¶ (C) of Petitioners' prayer for relief).

Respondent's apparent reason for so refusing is that, according to Petitioners, Bagby was obligated "under applicable law" to deduct withholding taxes from the first installment payment of the award, and to, within one business day thereafter,

---

[5] With said payment, Bagby contends that it included a "detailed spreadsheet showing the distribution of all applicable withholding and other taxes withheld from the first payment and giving [Respondent] a 'credit' (for purposes of computing the amount subject to withholding taxes) for return to him of amounts he had paid for shares plus amounts with, while he did not actually pay same in cash, were previously treated in company audits and W-2 forms as having been distributed to him." (Id., ¶ 14).

Additionally, as authorized by Respondent, Bagby made the check for said payment payable to Respondent's counsel in the arbitration proceeding, Lowe & Grammas, LLP. (Id.).

remit such withheld amounts to the "taxing authorities."[6] (Id., ¶ 15). Consequently, rather than dispatching to Respondent a check in the amount of $665,571.00, Bagby paid Respondent $347,531.00, which, according to Bagby, represents the total first installment payment, less applicable federal, state, and local withholding taxes due "with respect to all installments of the full redemption price" of Respondent's stock certificates. (Id; Id., exh. F). Petitioners contend that the total amount deducted from the original payment amount equaled $318,040.00, which, they aver, Bagby remitted to the proper taxing authorities "as required by law." (Id. ¶¶ 15-16; Id., exh. H).

On July 27, 2007, Petitioners filed a Petition to Enforce the Arbitration Award Pursuant to the Federal Arbitration Act and Complaint for Declaratory Judgment in this court. (doc. 1). In said petition and complaint, Petitioners asked this court to (1) exercise jurisdiction over this action under the Federal Arbitration Act, 9 U.S.C. § 9; (2) issue an Order confirming and enforcing the arbitration award discussed *supra*; (3) issue an Order commanding Respondent to accept Bagby's tendered payment as payment of the first installment due under the award; (4) issue an Order commanding

---

[6] In support of this argument, Petitioners cite generally to 26 U.S.C. §§ 2402(a)(1), 3403, 3101(a) and (b), and "regulations relating thereto"; Ala. Code. §§ 40-18-70 and 71, and Ala. Admin. Code. r. 810-3-71-.01. Petitioners explain further that "after such withholding, assuming [Respondent] executes the required Internal Revenue Form W-9, withholding taxes will not have to be withheld from the remaining $700,000.00 of installment payments specified in the Award; and interest on such remaining installments will thereafter be reported to [Respondent] via an Internal Revenue Form 1099-INT report each year." (Id., ¶ 15).

5

Respondent to surrender all of his Bagby stock certificates; (5) issue an Order recognizing that the arbitration award stands as security for Respondent's receipt of the remaining $700,000.00, plus interest, in 48 monthly installments due to him under the award; (6) issue an Order under 28 U.S.C. § 2201 that Bagby has complied with the arbitration award by tendering the check payable to Lowe & Grammas, LLP, in the amount of $347,531.00; and (7) grant Petitioners "such other and further relief, including without limitation specific performance and declaratory relief with respect to federal tax laws." (doc. 1).

On August 7, 2007, Respondent filed the pending Motion to Dismiss Petitioners' Complaint on the basis that the court lacks jurisdiction over the subject matter of this action. (doc. 7). On August 30, 2007, while said motion was pending, Petitioners filed their First Amended Petition and Complaint.[7] (doc. 10).

Petitioners filed their response in opposition to the Motion to Dismiss the following day. (doc. 11). Respondent replied to Petitioners' opposition on September 5, 2007. (doc. 12). Additionally, rather than file a motion to dismiss the

---

[7] In the Amended Complaint, Petitioners' claims are identical to those alleged in the original complaint, with an additional request that the court "enforc[e] the provisions of the Internal Revenue Code which are intended to protect an employer like Bagby Elevator against dispute and suit or liability for withholding and remitting income taxes to governmental authorities, including without limitation 26 U.S.C. § 3403 and 26 U.S.C. § 7421(a)." (Am. Compl. pg. 2). Petitioners apparently added this request for relief based on their belief that Respondent intends to sue them for wrongfully withholding taxes from Bagby's first installment payment under the arbitration award. (See Am. Compl. ¶ 24).

6

amended complaint, Respondent filed the pending Motion to Strike Petitioners' First Amended Complaint, also on September 5, 2007. (doc. 13). Petitioners filed their response to Respondent's Motion to Strike on September 11, 2007. (doc. 14). Respondent filed no reply to said response.

### III.   ANALYSIS

####   1.   Motion to Strike Amended Complaint

As explained *supra*, Respondent seeks to dismiss this action because, he avers, Petitioners have failed to demonstrate that this court has subject matter jurisdiction based on the allegations in the original complaint. Respondent also argues that the deficiencies in the original complaint are not corrected by Petitioners' Amended Complaint. Therefore, Respondent avers, the Amended Complaint is due to be stricken.

FED. R. CIV. P. 15(a) provides that "[a] party may amend the party's pleading once <u>as a matter of course</u> at any time before a responsive pleading is served. . . ." (Emphasis added). Respondent does not address this language or argue that an exception to this rule – if any – applies to the circumstances of this action. Nevertheless, the language of Rule 15(a) is clear, and specifically allows Petitioners to file an Amended Complaint without leave of the court as long as no responsive

pleading has yet been filed.[8]

Nevertheless, Respondent appears to assert that the Amended Complaint should be stricken on futility grounds. The court disagrees. While a district court may deny a claimant's motion for leave to amend on grounds of futility, the law of this circuit mandates that courts do not have similar discretion where a claimant may amend "as a matter of course." In *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282 (11th Cir. 2007), the court explained that "[w]hen the plaintiff has the right to file an amended complaint as a matter of course, [ ] the plain language of Rule 15(a) shows that the court lacks the discretion to reject the amended complaint based on its alleged futility." *Id.* at 1292 n. 6.

Based on the foregoing, the court finds that is does not have discretion to strike Petitioners' Amended Complaint, even if it agreed with Respondent that the amendments therein fail to redress any deficiencies in the original complaint.

---

[8] While this point is not in dispute, the court finds that Respondent's Motion to Dismiss Petitioners' original complaint, though filed prior to the Amended Complaint, does not constitute a "responsive pleading" that bars Petitioners from filing their Amended Complaint without leave of the court under Rule 15(a). It is well settled that a motion to dismiss is not a "responsive pleading" for purposes of Rule 15. *See, e.g., Chilivis v. S.E.C.*, 673 F.2d 1205, 1209 (11th Cir. 1982) ("[n]either a motion to dismiss nor a motion for summary judgment constitutes responsive pleadings for purposes of the federal rules," citing *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979) (motion to dismiss not a responsive pleading for purposes of FED. R. CIV. P. 15); *Hanraty v. Ostertag*, 470 F.2d 1096, 1097 (10th Cir. 1972) (motion to dismiss not a responsive pleading for purposes of FED. R. CIV. P. [15]); *Miller v. American Export Lines, Inc.*, 313 F.2d 218 n. 1 (2nd Cir. 1963) (motion for summary judgment not a responsive pleading for purposes of FED. R. CIV. P. 15)).

Therefore, the Motion to Strike is due to be **DENIED**. Accordingly, because Petitioners' Amended Complaint is now operative, and because Respondent's Motion to Dismiss applies only to the original complaint, said motion is due to be **DENIED as MOOT**.[9] A separate Order will be entered.

**DONE** and **ORDERED** this the 3rd day of October, 2007.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9] The Motion to Strike is limited to asking the court to strike the Amended Complaint. (doc. 13). Respondent explains that he "hereby adopts the arguments he raised in his Motion to Dismiss <u>as grounds to strike</u> the Amended Complaint." (doc. 13 ¶ 5) (emphasis added). Therefore, the court does not consider Respondent's Motion to Strike as a Motion to Dismiss Petitioners' Amended Complaint.