## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BAGBY ELEVATOR, CO., INC.; et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**ARTHUR W. STEBER,** )<br>)<br>**Defendant.** ) | )<br>)<br>)<br>) **Case No.: 2:07-CV-1396-VEH**<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

Before the court is the Motion of the Defendant, Arthur W. Steber (hereinafter "Defendant") to dismiss the above-styled action for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1), filed on October 5, 2007. (doc. 18). For the reasons set forth herein, the motion is due to be **DENIED**.

**I.     FACTUAL HISTORY**

Defendant is the former President of Bagby Elevator Co., Inc. (hereinafter "Bagby"). (doc. 10, ¶ 7). In March 2006, following the termination of his employment with Bagby, Defendant filed an action against the Plaintiffs, Bagby, Arthur P. Bagby (current President and Chairman of Bagby), Anita Leslie Bagby (board member of Bagby), and Hunter Bagby (Vice President, General Counsel, and

board member of Bagby) (hereinafter "Plaintiffs") in the Circuit Court of Jefferson County, Alabama, asserting claims of minority shareholder oppression, fraud, breach of contract, defamation, and "other matters relating to his termination" from Bagby. (Id., ¶¶ 4-6, 8). Plaintiffs moved to dismiss the action, arguing, *inter alia*, that the action was barred pursuant to an arbitration agreement.[1] (Id.). On a date unspecified in the Amended Complaint, the State court granted Plaintiffs' motion to dismiss. (Id., ¶ 9).

On April 18, 2006, Defendant filed an arbitration claim against Bagby, asserting "essentially [a copy of] his prior State court complaint." (Id., ¶ 8). In addition, Defendant demanded that Bagby redeem all of the stock in Bagby either owned by him or claimed to be due him. (Id.).

Bagby answered Defendant's claims, denying all of the material allegations therein, on April 25, 2006. (Id., ¶ 9). Bagby also filed counterclaims for specific performance, declaratory relief, accounting and "other claims relating to [Defendant's] misconduct." (Id.). Finally, Bagby sought an award decreeing that it was entitled to redeem Defendant's stock in Bagby. (Id.).

During the weeks of March 26-30 and May 28-June 1, 2007, the dispute was

---

[1] The parties to said arbitration agreement are unclear on the face of the Amended Complaint.

submitted to an arbitration hearing, conducted by a three-member panel of the American Arbitration Association in Birmingham, Alabama. (Id., ¶ 10). On June 28, 2007, the panel issued an award which, according to Plaintiffs, denied all of Defendant's tort law claims against Bagby and granted the redemption relief that had been sought by both parties. (Id.). Specifically, the panel found that Bagby was to redeem Defendant's stock holdings in that company for a total of $1,365,571.00.[2] (Id., ¶ 11). The panel further concluded that Bagby was to pay this amount in installments, beginning with a payment of $665,571.00 within thirty days of the award date, and continuing with installments of $17,089.00 due on the first day of each month beginning August 1, 2007.[3] (Id.).

Having accepted the award, Bagby contacted counsel for Defendant on July 24, 2007, to communicate its plan to make its first payment under the award and to request a closing of that award at said counsel's offices on July 27, 2007. (Id., ¶ 12; Id., exh. C). Bagby also requested that Defendant relinquish his stocks certificates in Bagby as, according to Bagby, both the award and the first redemption payment,

---

[2] To determine the amount of money to which Defendant was entitled for the redemption of his stock ownership in Bagby, the panel determined that Defendant owned or constructively owned a 18.11% interest in Bagby. (Id., ¶ 11).

[3] More specifically, after paying Defendant the initial installment of $665,571.00, Bagby was to pay the total remaining balance of $700,000.00, plus interest at 8% per annum from June 30, 2007, in 48 monthly installments of $17,089.00. (Id.).

3

once tendered, rendered Defendant a creditor of Bagby rather than a shareholder. (Id.). In response, counsel for Defendant refused both to attend the closing and to surrender Defendant's stock certificates. (Id., ¶ 13; Id., exh. D). Said counsel requested instead that Bagby tender the first installment payment via mail to its offices. (Id.). Bagby did so as requested on July 27, 2007 via first class mail.[4] (Id., ¶ 14).

## II.  PROCEDURAL HISTORY

Based on the allegations in the Amended Complaint, which are not altogether clear, it appears that Defendant refused to accept the check tendered as described *supra* in satisfaction of Bagby's first payment due him under the arbitration award. (See doc. 10, ¶ 15, and ¶ (C) of Plaintiffs' prayer for relief).

Defendant's apparent reason for so refusing is that, according to Plaintiffs, Bagby was obligated "under applicable law" to deduct withholding taxes from the first installment payment of the award, and to, within one business day thereafter,

---

[4]  With said payment, Bagby contends that it included a "detailed spreadsheet showing the distribution of all applicable withholding and other taxes withheld from the first payment and giving [Defendant] a 'credit' (for purposes of computing the amount subject to withholding taxes) for return to him of amounts he had paid for shares plus amounts which, while he did not actually pay same in cash, were previously treated in company audits and W-2 forms as having been distributed to him." (Id., ¶ 14).

Additionally, as authorized by Defendant, Bagby made the check for said payment payable to Defendant's counsel in the arbitration proceeding, Lowe & Grammas, LLP. (Id.).

remit such withheld amounts to the "taxing authorities."[5]  (Id., ¶ 15).  Consequently, rather than dispatching to Defendant a check in the amount of $665,571.00, Bagby paid Defendant only $347,531.00, which, according to Bagby, represents the total first installment payment, less applicable federal, state, and local withholding taxes due "with respect to all installments of the full redemption price" of Defendant's stock certificates.  (Id; Id., exh. F).  Plaintiffs contend that the total amount deducted from the original payment amount equaled $318,040.00, which, they aver, Bagby remitted to the proper taxing authorities "as required by law."  (Id. ¶¶ 15-16; Id., exh. H).

On July 27, 2007, Plaintiffs filed a Petition to Enforce the Arbitration Award Pursuant to the Federal Arbitration Act and Complaint for Declaratory Judgment in this court.  (doc. 1).  In said petition and complaint, Plaintiffs asked this court to (1) exercise jurisdiction over this action under the Federal Arbitration Act, 9 U.S.C. § 9; (2) issue an Order confirming and enforcing the arbitration award discussed *supra*; (3) issue an Order commanding Defendant to accept Bagby's tendered payment as

---

[5]  In support of this argument, Plaintiffs cite generally to 26 U.S.C. §§ 2402(a)(1), 3403, 3101(a) and (b), and "regulations relating thereto"; Ala. Code. §§ 40-18-70 and 71, and Ala. Admin. Code. r. 810-3-71-.01.  Plaintiffs explain further that "after such withholding, assuming [Defendant] executes the required Internal Revenue Form W-9, withholding taxes will not have to be withheld from the remaining $700,000.00 of installment payments specified in the Award; and interest on such remaining installments will thereafter be reported to [Defendant] via an Internal Revenue Form 1099-INT report each year."  (Id., ¶ 15).

payment of the first installment due under the award; (4) issue an Order commanding Defendant to surrender all of his Bagby stock certificates; (5) issue an Order recognizing that the arbitration award stands as security for Defendant's receipt of the remaining $700,000.00, plus interest, in 48 monthly installments due to him under the award; (6) issue an Order under 28 U.S.C. § 2201 that Bagby has complied with the arbitration award by tendering the check payable to Lowe & Grammas, LLP, in the amount of $347,531.00; and (7) grant Plaintiffs "such other and further relief, including without limitation specific performance and declaratory relief with respect to federal tax laws." (doc. 1).

On August 7, 2007, Defendant filed a Motion to Dismiss Plaintiffs' Complaint on the basis that the court lacks jurisdiction over the subject matter of this action. (doc. 7). On August 30, 2007, while said motion was pending, Plaintiffs filed their First Amended Petition and Complaint.[6] (doc. 10).

---

[6] In the Amended Complaint, Plaintiffs' claims are identical to those alleged in the original Complaint, with an additional request that the court "enforc[e] the provisions of the Internal Revenue Code which are intended to protect an employer like Bagby Elevator against dispute and suit or liability for withholding and remitting income taxes to governmental authorities, including without limitation 26 U.S.C. § 3403 and 26 U.S.C. § 7421(a)." (Am. Compl. pg. 2). Plaintiffs apparently added this request for relief based on their belief that Defendant intends to sue them for wrongfully withholding taxes from Bagby's first installment payment under the arbitration award. (See Am. Compl. ¶ 24). Hence, the primary difference between the original Complaint and the Amended Complaint is that, in the original Complaint, Plaintiffs asserted that the court could exercise subject matter jurisdiction pursuant to the Federal Arbitration Act and the Declaratory Judgment Act, but did not specify which "federal tax statutes" upon which the Complaint was based. (See doc. 1). In the Amended Complaint, Plaintiffs specified said statutes and thus, as explained *infra*, provided a proper basis for this

Rather than file a motion to dismiss the Amended Complaint, Defendant filed a Motion to Strike Plaintiffs' First Amended Complaint, also on September 5, 2007. (doc. 13). The court, pursuant to FED. R. CIV. P. 15(a), denied the Motion to Strike on the grounds that Plaintiffs could amend their Complaint once as a matter of course prior to Defendant's filing any responsive pleading thereto. (See Order, doc. 17). Accordingly, as the pending Motion to Dismiss applied only to the original Complaint, which was no longer operative before this court, the court also denied the Motion to Dismiss as moot. (Id.).

On October 5, 2007, Defendant filed the pending Motion to Dismiss the Plaintiffs' Amended Complaint for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). (doc. 18). Plaintiffs filed their response in opposition to the motion on October 16, 2007. (doc. 20). On October 18, 2007, Defendant filed his reply brief. (doc. 21).

## III.   STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction. Federal courts have limited subject matter jurisdiction – in other words, they have the power to decide only certain types of cases. *Smith v. GTE Corp.*, 236

---

court to exercise jurisdiction in this action.

F.3d 1292, 1298 (11th Cir. 2001), citing *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1260-61 (11th Cir. 2000).

Subject matter jurisdiction is conferred and defined by statute.  It cannot be created by the consent of the parties, nor supplanted by considerations of convenience and efficiency.  *Morrison*, 228 F.3d at 1261.  Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.   *Smith,* 236 F.3d at 1299.

A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.  *Smith,* 236 F.3d at 1299, citing *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985). A court may inquire into the basis of its subject matter jurisdiction at any stage of the trial.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[7]  However, a federal court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005).

---

[7] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

It is extremely difficult to dismiss a claim for lack of subject matter jurisdiction. *Garcia v. Copenhaver, Bell & Assoc., M.D.'s*, 104 F.3d 1256, 1260 (11th Cir. 1997), citing *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986); *cf. Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007) (recognizing that, in diversity cases, as it relates to the amount in controversy, "'it was not open for defendants to attempt to show' the requisite amount in controversy per capita where the complaint made insufficient allegations, '[n]or was it open to the district court to speculate' on whether the jurisdictional facts existed," quoting *Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir. 1978). This is due to the fact that there is a "very low threshold of sufficiency prescribed by the Federal Rules of Civil Procedure." *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.* 711 F.2d 989, 998 (11th Cir. 1983); *see also United States v. Employing Plasterers Ass'n of Chicago*, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954).

A motion to dismiss for lack of subject matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by

9

undisputed facts and the court's resolution of disputed facts. *Id.*

Because the burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *See Ramming*, 281 F.3d at 161, citing *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex. 1995), and *Menchaca*, 613 F.2d at 511.

"[A] plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Morrison*, 228 F.3d at 1273, citing *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." *Morrison*, 228 F.3d at 1273, citing *Majd-Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984).

Further, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Bochese*, 405 F.3d at 974-75, citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Because the requirement of subject matter jurisdiction involves the court's competency to consider a given type of case, it "cannot be waived or otherwise conferred upon the court by the parties." *Bochese,* 405 F.3d at 975, quoting *Jackson v. Seaboard Coast Line R.R.*,

678 F.2d 992, 1000-01 (11th Cir. 1982).

## IV.   ANALYSIS

To avoid dismissal under Rule 12(b)(1), Plaintiffs must demonstrate that this action is within the court's subject matter jurisdiction, *see Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994); *Ishler v. Internal Revenue*, 237 Fed.Appx. 394, 395 (11th Cir. 2007)[8], citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n. 2 (11th Cir.2005).  They offer two bases for this court to exercise subject matter jurisdiction in this case:  (1) the Federal Arbitration Act, 9 U.S.C. § 9, and (2) the Declaratory Judgment Act, 28 U.S.C. § 2201(a), via interpretation and application of 26 U.S.C. §§ 3403 and 7421(a).

The Federal Arbitration Act does not provide an independent basis for jurisdiction.  *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 n. 32, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983) ("[t]he Arbitration Act . . . does not create any independent federal-question jurisdiction"); *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir. 1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982) ("[t]he provisions of 9 U.S.C. § 9 do not

---

[8] FED. R. APP. P. 32.1 provides that "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."

in themselves confer subject matter jurisdiction on a federal district court"); *Harry Hoffman Printing, Inc. v. Graphic Communications, Intern. Union*, 912 F.2d 608, 611 (2nd Cir. 1990) ("Congress did not intend the Arbitration Act as a grant of jurisdiction. There must be an independent basis of jurisdiction before a district court may entertain petitions under the Act"); *Yasuda Fire & Marine Ins. Co. of Europe Ltd. v. Continental Cas. Co.*, 840 F.Supp. 578, 579 n. 3 (N.D.Ill. 1993), *aff'd*, 37 F.3d 345 (7th Cir. 1994) ("[a]s with federal jurisdiction to confirm arbitration awards under [the Arbitration] Act § 9, the Act itself is not a source of subject matter jurisdiction – some independent basis of federal jurisdiction must exist").

Therefore, the only basis upon which this court may proper exercise jurisdiction is pursuant to the Declaratory Judgment Act. Defendant focuses primarily on this basis in his Motion to Dismiss.

The Declaratory Judgment Act provides, in relevant part, that

> [i]n a case of actual controversy within its jurisdiction, <u>except with respect to Federal taxes</u> [ ], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).

Specifically, Plaintiffs request a declaration that, under 26 U.S.C. § 3403[9], Bagby properly withheld taxes from the first installment payment due Defendant under the arbitration award and, therefore, Defendant may not sue Bagby for wrongfully withholding said taxes as, Plaintiffs aver, Defendant intends to do if this court does not grant the requested declaratory relief.  (doc. 10, ¶¶1, 15, Prayer for Relief ¶ (F)).

Defendant responds that this court may not issue such relief because, pursuant to that portion of the Declaratory Judgment Act underlined *supra*, federal courts lack jurisdiction to grant declaratory relief in "tax cases."[10]

---

[9] 26 U.S.C. § 3403 provides that "[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment."

[10] In *Ishler v. Internal Revenue*, 237 Fed.Appx. 394, 396 (11th Cir. 2007), the Eleventh Circuit instructed that

> [the Declaratory Judgment] Act . . . "does not, of itself, confer       jurisdiction upon federal courts," *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989), and so it cannot be construed as a jurisdictional bar per se. *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 582 (4th Cir.1996) (persuasive authority).  Instead, the Declaratory Judgment Act merely "proscribes judicial declaration of the rights and legal relations of any interested parties in disputes involving federal taxes." *Raulerson v. United States*, 786 F.2d 1090, 1093, n. 7 (11th Cir.1986).

According to Defendant, *Ishler* is the most recent of a line of cases which stands for the proposition that, in "tax cases," federal courts lack jurisdiction to issue declaratory relief. Defendant also cites to *Horne v. United States*, 519 F.2d 51, 52 (5th Cir. 1975), *Hunsucker v. Phinney*, 497 F.2d 29, 36 (5th Cir. 1974) (both holding that a declaratory judgment may not be issued in a "tax case"), and *McCabe v. Alexander*, 526 F.2d 963 (5th Cir. 1976) in support of this argument.

13

As a second basis for dismissal, Defendant argues that this court is barred from exercising jurisdiction over this action pursuant to the Anti-Injunction Act, 26 U.S.C. § 7421(a), which provides that ". . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." Because <u>both</u> the Declaratory Judgment Act and the Anti-Injunction Act appear to prevent this court from exercising jurisdiction over tax-related cases, Defendant argues that this action is due to be dismissed.

Third, Defendant points to another provision of the Anti-Injunction Act, 26 U.S.C. § 7422(a), which provides that

> [n]o suit or proceeding shall be maintained in any court <u>for the recovery of</u> any internal revenue tax <u>alleged to have been erroneously or illegally assessed or collected</u>, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, <u>until a claim for refund or credit has been duly filed with the Secretary</u>, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added).

Defendant argues that, because he has not yet filed suit with the Internal Revenue Service for a refund of the taxes withheld, this court is specifically

---

As explained more fully *infra*, none of these cases supports Defendant's argument that, in this action, this court lacks jurisdiction to issue declaratory relief.

14

prohibited from entertaining this action. To support this argument, Defendant cites to *Hempel v. United States*, 14 F.3d 572, 574 (11th Cir. 1994) ("Once a proper assessment has been made, the taxpayer's recourse is to pay the tax and bring a suit for refund"). Defendant avers that he is currently determining whether he is entitled to a refund, and if he so determines, he will then seek a refund from the Internal Revenue Service. As Defendant asserts, he "has never once [ ] threatened to sue [Plaintiffs] for the manner in which they withheld taxes from the Arbitration Award, must less take[n] formal legal action." (Def's Br. (doc. 18) at 9). Consequently, Defendant argues, not only does the court lack jurisdiction because this action "involv[es] federal taxes" under the Declaratory Judgment Act, but also because this action lacks a justiciable controversy under the Anti-Injunction Act, and is therefore not ripe for review.[11]

In response, Plaintiffs argue that none of Defendant's three asserted bases for

---

[11] The court acknowledges Defendant's argument that, because he has not yet sued Bagby, no controversy exists under the Declaratory Judgment Act for this court to decide. The court disagrees. This action is predicated on Defendant's refusal to accept Bagby's payment under the arbitration award and his admission that he disagrees with Bagby's "unilateral" decision to withhold taxes from said payment. As explained *supra*, Plaintiffs ask this court to declare that, consistent with 26 U.S.C. § 3403, Defendant must direct his dispute over said withholding to the Internal Revenue Service via a refund suit, rather than continue to dispute with Bagby. If the court agrees with Plaintiffs and finds that Defendant may not assert claims against Bagby for withholding taxes from the arbitration award, Plaintiffs will be spared continued litigation with Defendant regarding its withholding under the award. The court finds in these facts a sufficient controversy to justify its exercise of jurisdiction under the Declaratory Judgment Act.

dismissing this action actually prevents this court from exercising jurisdiction in this case. Plaintiffs explain that, despite the variation in language between the two acts, the tax exception to the Declaratory Judgment Act and the Anti-Injunction Act operate <u>coterminously</u>, such that this court is proscribed from exercising jurisdiction by the Declaratory Judgment Act only as far as the Anti-Injunction Act also prohibits it.

Plaintiffs argue further that, despite Defendant's arguments to the contrary, this action runs afoul of neither 26 U.S.C. § 7421(a) nor § 7422(a). According to Plaintiffs, this action is more properly described as follows:

> <u>This suit does not ask this Court to determine [Defendant's] entitlement to a refund</u>, or, indeed, exactly how much tax [Defendant] ultimately owes. Instead, this suit says, in effect, "[Bagby] has already computed and paid the amount the [Internal Revenue] Code requires it to unilaterally calculate and remit," and merely asks this Court to confirm that [Bagby] acted in accord with the federal tax laws in so doing, such that [Defendant] has no right to continue to dispute <u>with [Bagby]</u> its actions, instead, he must leave [Bagby] alone and take his dispute to the government, via either refund suit or a 26 U.S.C. § 7433 action.

(Pl's Opp. Br. (doc. 20) at 2, ¶ 5) (emphasis in original).

Plaintiffs argue that, because this action is not a "taxpayer action" brought to "restrain the assessment or collection of any tax" in violation of 26 U.S.C. § 7421(a), or to recover a tax already paid, in violation of 26 U.S.C. § 7422(a), the Anti-Injunction Act does not apply to bar this court from exercising jurisdiction and hence,

16

neither does the tax exception to the Declaratory Judgment Act. On this basis, the cases cited by Defendant *supra* are readily distinguishable from this action.[12]

Defendant fails to adequately respond to this argument in his reply brief. Instead, he ignores the proposition that the tax exception to the Declaratory Judgment Act is coterminous with the Anti-Injunction Act, and therefore does not apply to this

---

[12] More specifically, in *Hunsucker*, the court concluded that the case before it was not a "tax case," and therefore did not address the scope of the tax exception to the Declaratory Judgment Act. 497 F.2d at 36. Rather, the central issue before it was whether a declaratory judgment could be issued regarding the legality of the seizure of certain documents from the petitioner's possession, some of which were relevant to the petitioner's tax liability under the Internal Revenue Code. *Id.* at 31. Therefore, *Hunsucker* is not on point with this action, and provides no reason why this court may not properly exercise jurisdiction in this case.

Similarly, in *Horne*, the scope of the tax exception to the Declaratory Judgment Act was not addressed by the court, which found that the plaintiff's request that a deficiency assessment be declared void was an attempt to seek a declaratory judgment, and therefore affirmed the district court's dismissal of the action for "lack of jurisdiction." 519 F.2d at 52. Because the plaintiff in *Horne*, unlike Plaintiffs here, specifically sought to restrain the assessment of a federal tax in contravention of 26 U.S.C. § 7421(a), the tax exception to the Declaratory Judgment Act also proscribed district court jurisdiction in that case.

In *McCabe*, the action was dismissed pursuant to 26 U.S.C. § 7421(a), because the plaintiff there was specifically seeking to enjoin the sale of his real property in satisfaction of tax liabilities to the Internal Revenue Service. 526 F.2d at 965. For the same reason, the court explained that the tax exception to the Declaratory Judgment Act also proscribed the court from exercising jurisdiction over the case. *Id.* Hence, the action was not dismissed merely because it was a "tax case" under the Declaratory Judgment Act, but because <u>that</u> <u>particular</u> "tax case" was proscribed by the tax exception to the Declaratory Judgment Act. *Id.*

Finally, in *Ishler*, the Eleventh Circuit affirmed the district court's dismissal of the action because the plaintiff had asserted no federal question for the court to decide in the absence of diversity jurisdiction. 237 Fed.Appx. at 396-97. Consistent with the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act, the court lacked jurisdiction to issue declaratory relief in *Ishler* because the plaintiff there specifically sought to recover a tax which he alleged had been erroneously assessed.

17

action.  Instead, Defendant avers merely that the tax exception to the Declaratory Judgment Act is "broad and clear and requires this Court to dismiss this action." (Def's Reply Br. at 2, ¶ 1).

The court agrees with Plaintiffs, and finds Defendant's arguments to the contrary are an overly broad, and ultimately incorrect, application of the tax exception to the Declaratory Judgment Act and the Anti-Injunction Act.  As explained by the Supreme Court in *Bob Jones University v. Simon*, 416 U.S. 725, 732, 94 S.Ct. 2038, 2044, 40 L.Ed.2d 496 (1974),

> A number of courts [ ] have held that the federal tax exception to the Declaratory Judgment Act and the Anti-Injunction Act have coterminous application. *E.g., 'Americans United' Inc. v. Walters*, 155 U.S.App.D.C. 284, 291, 477 F.2d 1169, 1176 (1973), *rev'd sub nom. Alexander v. 'Americans United' Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518; Tomlinson v. Smith, 128 F.2d 808 (CA7 1942); *McGlotten v. Connally, supra*; *Jules Hairstylists of Maryland, Inc. v. United States*, 268 F.Supp. 511 (Md.1967), *aff'd*, 389 F.2d 389 (CA4), *cert. denied*, 391 U.S. 934, 88 S.Ct. 1847, 20 L.Ed.2d 854 (1968). [ ] There is no dispute, however, that the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act.[13]

---

[13] In *'Americans United' Inc. v. Walters*, the District of Columbia Circuit explained that, while the tax exception to the Declaratory Judgment Act is "[l]iterally broader than § 7421(a) in its preclusion of tax oriented remedies, the § 2201 exception has literarily been found coterminous with that provided by § 7421(a)." 477 F.2d at 1176 (emphasis added).  The court further explained that "[t]he breadth of the tax exception of § 2201 is co-extensive with the effect of § 7421(a), and so the applicability of the latter to our situation is determinative of jurisdiction." *Id.*

Similarly, in *McGlotten*, the court explained that "[i]n our view, the scope of [the tax] exception [to the Declaratory Judgment Act] is coterminous with the breadth of the Tax Injunction Act, 26 U.S.C. § 7421(a), which forbids enjoining the collection or assessment of any tax.  As originally

In *Dominion Trust Co. of Tennessee v. United States*, 786 F.Supp. 1321, 1323 (M.D.Tenn. 1991), the court explained that

> the [Declaratory Judgment] Act "neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief. The jurisdictional boundaries in tax cases are drawn by the Anti-Injunction Act, 26 U.S.C. § 7421. . . ." *McCarthy v. Marshall*, 723 F.2d 1034, 1037 (1st Cir.1983). [T]he legislative history of the Declaratory Judgment Act indicates that "the congressional intent was to create a prohibition as to actions concerning federal taxes coterminous with that provided in the Anti-Injunction Act so as to preclude circumvention of the provisions of the Anti-Injunction Act through the maintenance of an action seeking declaratory relief only." *Lugo v. Smith*, 453 F.Supp. 677, 690 (N.D.Ohio 1978) (citing *Eastern Kentucky Welfare Rights Organization v. Simon*, 506 F.2d 1278, 1285 (D.C.Cir.1974), *vacated on other grounds*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). *See also Ecclesiastical Order of the ISM of AM, Inc. v. Internal Revenue Service*, 725 F.2d 398, 404-05 (6th Cir.1984) ("[t]he two Acts, though not similarly worded are, as the majority notes, to be interpreted coterminously.") (Jones, J., concurring in part and dissenting in part; footnote omitted; citing *Lugo v. Smith*, *supra*). "Thus, despite its broad language, the Declaratory Judgment Act bars only declaratory relief sought 'for the purpose of restraining the assessment or collection of any tax.'" *Church of Scientology of Celebrity Centre, Los Angeles v. Egger*, 539 F.Supp. 491, 494 (D.D.C.1982).

While the court is not bound by *Dominion* or any of the case law cited therein,

---

passed in 1935, the Declaratory Judgment Act did not contain the present exception for Federal taxes. The exception was added the following year for the explicit purpose of limiting the jurisdiction of the courts to issue declaratory judgments in the same fashion as their general jurisdiction was limited by the Tax Injunction Act. If the injunctive relief requested by plaintiff is barred by the Tax Injunction Act so too will relief be barred by the Declaratory Judgment Act." 338 F.Supp. at 453.

it is persuaded by its reasoning, and agrees with Plaintiffs that, because the Anti-Injunction Act does not bar this court from exercising jurisdiction in this case, neither does the tax exception to the Declaratory Judgment Act proscribe the court from issuing declaratory relief.

## V. CONCLUSION

Defendant argues that Plaintiffs have "totally failed" to meet their burden of demonstrating that this court has jurisdiction to issue the relief they seek. The court disagrees, and concludes that it may properly exercise jurisdiction in this action. Hence, Defendant's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to FED. R. CIV. P. 12(b)(1) is due to be **DENIED**. A separate Order will be entered.

**DONE** this the second day of November, 2007.

*/s/ Virginia Emerson Hopkins*

**VIRGINIA EMERSON HOPKINS**
United States District Judge